IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>GREG RENE ESPARZA,  )<br>  )<br>  Defendant.  )<br>_____) | Case No. CR-07-14-S-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## MEMORANDUM DECISION

The Court has before it the Defendant's Motion to Suppress. (Docket No. 15). The Court heard testimony and oral argument on August 14, 2007, and took the motion under advisement. The Court will grant the motion for the reasons expressed below.

## BACKGROUND

On May 18, 2006, Special Agents Mark Leiser and Steven Rebbe observed the Defendant, Esparza, standing next to the trunk of a gold Cadillac, parked in front of the Caldwell residence where Esparza was known to be staying. The trunk, driver's door, and left rear passenger's door were all open. The agents were there conducting surveillance of Esparza because there was an active warrant for

**Memorandum Decision and Order - 1**

his arrest. The agents were in plain clothes with only their badges around their necks, and they arrived in an unmarked vehicle. When the agents approached Esparza on foot from behind, identifying themselves, Esparza fled into the residence, leaving the trunk and the doors to the vehicle open. Esparza was subsequently arrested inside the residence.

Following the arrest, Officer Maund ran his narcotics detection dog around the exterior of the Cadillac. The dog did not alert. Officer Larimer was contacted to bring his explosives detection dog to the scene. On arrival, Officer Larimer walked around the car with his explosives detection dog. The dog alerted at the trunk and at the driver's seat. The police searched the car and found a single .22 caliber bullet inside a suitcase located in the trunk.

This motion to suppress requires the Court to consider three issues: (1) whether Esparza has standing to bring a motion to suppress; (2) whether walking the explosives detection dog around the vehicle implicates Esparza's Fourth Amendment rights; and (3) whether the explosives detection dog was reliable.

## ANALYSIS

**1.    Standing and Abandonment**

The Government contends that Esparza did not have a reasonable expectation of privacy in the vehicle and its contents. *Rakas v. United States*, 439

U.S. 128 (1978). The evidence suggests otherwise. Authorities were aware that Esparza was the primary driver of a Cadillac, although he was not the owner. Moreover, the Government used Esparza's recorded telephone calls while he was in jail to show that Esparza exercised control over the Cadillac. The Government cannot be allowed to argue, on the one hand, that Esparza possessed the car for purposes of establishing Esparza's guilt, but, on the other hand, deny Esparza's expectation of privacy in the car. *United States v. Isaacs*, 708 F.2d 1365, 1367-68 (9th Cir. 1983).

Still, if the Government can show that Esparza abandoned the vehicle, the Court could find that Esparza consequently abandoned his expectation of privacy in the car. *United States v. Veach*, 674 F.2d 1217, 1220 (9th Cir. 1981). To meet its burden, the Government must show that Esparza manifested an intent to abandon the car through his words, his acts, or other objective facts. *United States v. Nording*, 804 F.2d 1466, 1470 (9th Cir. 1986).

The Government has not made this showing. Upon realizing the presence of the police, Esparza fled from the Cadillac, leaving two doors and the trunk open. The Government's characterization that the vehicle was left on a public street is somewhat misleading because the vehicle was properly parked in front of the residence where Esparza was known to be staying. The facts of this case simply do

**Memorandum Decision and Order - 3**

not suggest that Esparza manifested an intent to abandon his car. Therefore, the Court finds that Esparza had a reasonable expectation of privacy in the vehicle and its contents.

**2.     Use of Explosives Detection Dog**

The Court was unable to find any case law specifically addressing the question of whether the use of an explosives detection dog constitutes an illegal search. While both the Supreme Court and the Ninth Circuit have held that a sniff for narcotics conducted by a reliable narcotics detection dog is not an illegal search, ( *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003)), no court has addressed whether the use of an explosives detection dog is an illegal search.

In *Caballes*, as in this case, the initial seizure of the defendant was concededly lawful. *Id*. at 407. However, as the Supreme Court noted, "[i]t is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Id.* Still, the Supreme Court stated that conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed the defendant's constitutionally protected interest in privacy. *Id.*

**Memorandum Decision and Order - 4**

Ultimately, the Supreme Court in *Caballes* determined that the use of a narcotics detection dog is not an illegal search because a narcotics detection dog reveals only the presence of contraband. *Id*. at 409. The Supreme Court explained that "the use of a well-trained narcotics-detection dog – one that does not expose non-contraband items that otherwise remain hidden from public view – during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Id.* (Internal quotation and citation omitted).

The Supreme Court contrasted its decision, however, with its earlier decision in *Kyllo v. United States*, 533 U.S. 27 (2001), in which it determined that the use of a thermal-imaging device was an unlawful search. The Court explained that, unlike a narcotics detection dog, the thermal-imaging device was capable of detecting lawful activity. *Caballes*, 543 U.S. at 409-10 (internal quotation and citation omitted). "Critical to that decision was the fact that the device was capable of detecting lawful activity." *Id*. at 409. "The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband." *Id.* at 410.

At first blush the facts presented here would appear to be governed by the holding in *Caballes* because it involved a similar level of intrusion – namely, using

**Memorandum Decision and Order - 5**

a dog to sniff the outside of the defendant's car.  However, the level of intrusion was not the linchpin to the decision in *Caballes*.  Rather, it was the fact that the dog was trained and used exclusively to sniff out contraband which provided the *sine qua non* for the Court's decision.  For that reason, it is *Kyllo,* and not *Caballes,* which dictates the result here, because an explosives detection dog, like the thermal-imaging device at issue in *Kyllo*, detects both contraband and non-contraband items.  For example, the dog in this case was trained to detect ammonium nitrate, a chemical found in household items such as fertilizer and printer cartridges.  Consequently, the dog may alert to non-contraband items, causing law enforcement to invade on the "legitimate expectation that information about perfectly lawful activity [] remain private."  *Id.*

Of course, the argument could well be made that *Kyllo* is distinguishable because the use of an explosives detection dog to sniff the exterior of a vehicle does not have the potential to reveal the same type of intimate activities which routinely occur inside one's home.  That distinction, however, does not change the *critical* similarity between the two cases – both the thermal-imaging device and the explosives detection dog are capable of detecting lawful activity.  *Id.* at 409.  The Fourth Amendment protects lawful activity from governmental intrusion, whether the activity is intimate or mundane.

**Memorandum Decision and Order - 6**

Accordingly, the Court concludes that walking the explosives detection dog around the vehicle implicated Esparza's Fourth Amendment rights. The Court will assume, without deciding, that such an invasion of Esparza's privacy interests can only pass constitutional muster if it is supported by a reasonable, articulable suspicion of criminal activity or that the police officer's safety was at risk.[1] More specifically, the government would be required to establish that the officers had a reasonable, articulable suspicion that the vehicle contains explosives or explosives related material. As Justice Souter explained in his dissent to *Caballes*, the Supreme Court "took care to keep a *Terry* stop from automatically becoming a foot in the door for all investigatory purposes; the permissible intrusion was bounded by the justification for the intrusion." *Id.* at 415. The explosives detection dog should not be used as a general criminal investigative technique. Rather, its use must be justified by concerns about explosives or weapons.

To meet its burden of reasonable, articulable suspicion, the Government provided the Court with evidence that the arresting officers knew that Esparza had

---

[1] Again, the Court is embarking into uncharted territory, since there appears to be no reported decisions dealing with the use of explosives detection dogs. However, the Court assumes that a *Terry*-type suspicion may satisfy the requirements of the Fourth Amendment, given the limited intrusive nature of a dog sniff. Indeed, the use of an explosives detection dog would appear to be no more intrusive than the "limited search of the outer clothing for weapons" sanctioned in *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968). In any event, if the government is unable to establish that the officer's did not have a reasonable articulable suspicion of criminal activity, it is clear that they did not have probable cause to search the vehicle.

**Memorandum Decision and Order - 7**

an outstanding arrest warrant for failure to appear in court, they knew that Esparza was a convicted felon, and they had general information suggesting that Esparza was involved with gangs in the area. Additionally, as the officers initially approached Esparza, Esparza fled from the car to the adjacent residence.

Although at first glance, this information may appear to raise a reasonable articulable suspicion of criminal activity or a danger to the officers, a closer look at the evidence suggests otherwise. First, the warrant was based on a misdemeanor failure to appear, and there is no indication that it related to a recently committed crime or, for that matter, to an explosives-related crime. Second, the officers had no specific information about Esparza's gang involvement. In fact, the officers did not find Esparza's alleged gang involvement significant enough to include in their police reports. Moreover, there is no evidence that Esparza was wearing gang colors, flashing gang signs, or that he was in the presence of other gang members at the time of the arrest. Third, Esparza "fled" two plain-clothed officers who approached him from behind, and fled straight into the adjacent residence where he was known to be staying. Fourth, the agents searched Esparza's residence and found no ammunition, firearms, or explosives material. Finally, at the time of the search, Esparza had been placed under arrest and had no access to the vehicle.

These facts do not suggest that Esparza illegally possessed firearms or

**Memorandum Decision and Order - 8**

explosives. There was simply no justification for searching Esparza's vehicle for explosives. The Court finds that the officers did not have reasonable, articulable suspicion to justify use of the explosives detection dog, and use of the explosives detection dog was therefore a violation of Esparza's Fourth Amendment rights. In turn, the Court finds that without consideration of the positive alert by the explosives detection dog, the officers did not have probable cause to search the vehicle.[2] Therefore, the Court will grant Esparza's motion and suppress the evidence seized during the search of the vehicle. [3]

### 3.     **Reliability of the Explosives Detection Dog**

Because the Court holds that the introduction of the explosives detection dog

---

[2] Although the parties did not raise the issue in their briefs, the Court also considered whether the search of the vehicle was a valid search incident to arrest as described in *New York v. Belton*, 453 U.S. 454 (1981). In *Belton* the Supreme Court held that when an officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest. Here, the bullet was located in the trunk of the car, not the interior or passenger compartment of the vehicle. Moreover, even if *Belton* allowed for a search of the trunk, the search in this case was not incident to the arrest because Esparza was not an occupant or recent occupant of the vehicle – he was not in close proximity, spatially, to the vehicle at the time of the arrest. See *Thornton v. United States*, 541 U.S. 615, 622-24 (2004).

[3] The precedential value of this decision is limited to its facts. This case does not present the situation where a dog was used to sniff for explosives in the face of imminent danger to national security. Justice Ginsburg, in her dissent in *Caballes*, stated that "the immediate, present danger of explosives would likely justify a bomb sniff under the special needs doctrine." *Caballes*, 543 U.S. at 423. The special needs doctrine is an important exception carved out for imminent dangers to national security. See *Nat'l Treasury Employees Union v. Van Raab*, 489 U.S. 656, 706 (1989). Whether the Fourth Amendment would permit sniffs for explosives under the special needs doctrine is not before this Court and the Court expresses no opinion on that issue.

**Memorandum Decision and Order - 9**

was an unlawful search, the Court does not reach the issue of whether the dog was reliable or whether its alert established probable cause to search the vehicle.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED, that Esparza's Motion to Suppress (Docket No. 15) shall be, and the same is hereby, GRANTED.



DATED: **September 7, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 10**